*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 73**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JIMMY OLGUIN,
*Appellee,*

*v.*

MARIE ANDERTON and CHRISTOPHER ANDERTON,
*Appellants.*

No. 20180098
Heard February 22, 2019
Filed December 19, 2019

On Certification from the Court of Appeals

Eighth District, Duchesne
The Honorable Samuel P. Chiara
No. 164000077

Attorneys:[1]

Michael D. Harrington, Jarell A. Dillman, Vernal,
Troy L. Booher, Julie J. Nelson, Salt Lake City, for appellee

John D. Hancock, Roosevelt, for appellants

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

---

[1] Amicus Curiae attorneys are:

Sean D. Reyes, Att'y Gen., Tyler R. Green, Solic. Gen., Andrew Dymek, Asst. Att'y Gen., Stanford E. Purser, Deputy Solic. Gen., Salt Lake City, for State of Utah.

JUSTICE PETERSEN, opinion of the Court:

**INTRODUCTION**

¶1 Jimmy Olguin conceived a child with Marie Anderton (Mother) while she was married to Christopher Anderton (Husband), who is presumed to be the child's father under Utah law. Olguin filed a petition in the district court to adjudicate his paternity of the child. Mother filed a motion to dismiss, arguing that Olguin lacked standing under the Utah Uniform Parentage Act (UUPA) because the child was born within a marriage. The district court noted that the court of appeals has interpreted the UUPA to deny standing to an alleged father[2] in Olguin's circumstances, but it observed that the court of appeals has not yet addressed the constitutional implications of its holding. Ultimately, the district court denied the motion to dismiss, concluding that to deny Olguin standing would violate his right to procedural due process under the federal constitution. In pretrial briefing, the parties again raised the issue of standing. The district court reaffirmed its procedural due process ruling but declined to conclude that Olguin had a substantive due process right at stake.

¶2 The court of appeals certified this case to us to address the constitutional issues raised by the parties and ruled upon by the district court. However, in a companion case that also issues today, we hold that the UUPA does grant standing to an alleged father, even when the child was conceived or born during a marriage with a presumed father. *See Castro v. Lemus*, 2019 UT 71, ¶¶ 3, 12, 51, 61, --- P.3d ---. Accordingly, Olguin's constitutional claims are moot.

¶3 We affirm the denial of the motion to dismiss on alternative grounds and remand to the district court.

**BACKGROUND**

¶4 Mother has been married to Husband since 2010.[3] Over the course of their marriage, Mother and Husband have separated

_____

[2] The UUPA defines "[a]lleged father" as "a man who alleges himself to be, or is alleged to be, the genetic father or a possible genetic father of a child, but whose paternity has not been determined." UTAH CODE § 78B-15-102(2).

[3] "When reviewing a rule 12(b)(6) motion to dismiss, we accept the factual allegations in the complaint as true and interpret those facts, and all reasonable inferences drawn therefrom, in a light most

(cont'd.)

several times. On one such occasion, Mother had a romantic relationship with Jimmy Olguin, and they conceived a child.

¶5   Mother and Husband subsequently reconciled, and the child was born in September 2012. Husband was listed as the child's father on the birth certificate. Despite this, Mother contacted Olguin that December to tell him that she believed he was the child's biological father. Subsequent genetic testing established a 99.99 percent probability that Olguin was indeed the biological father.

¶6   From December 2012 until March 2016, Mother and Husband allowed Olguin to have parent-time with the child. But Mother terminated contact between the two after the child was injured during a visit with Olguin.

¶7   Soon after, Olguin filed a petition to formally adjudicate the child's paternity. Mother moved to dismiss that petition, contending that subsection 78B-15-607(1) of the UUPA denied standing to Olguin in this situation. In support, Mother cited to the court of appeals' decision in *R.P. v. K.S.W.*, which held that subsection 607(1) limits standing to rebut the presumption of paternity to only the mother and the presumed father when the child is born during their marriage.[4] 2014 UT App 38, ¶¶ 26, 44, 320 P.3d 1084.

¶8   In his opposition to the motion to dismiss, Olguin conceded the correctness of the statutory interpretation based on the court of appeals' decision in *R.P.* But he argued that subsection 607(1) of the UUPA violates his constitutional right to procedural due process.

---

favorable to the plaintiff as the nonmoving party." *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 34, 108 P.3d 741. We recite the facts accordingly.

[4] In 2017, after *R.P. v. K.S.W.*, 2014 UT App 38, 320 P.3d 1084, issued, the Utah Legislature amended Utah Code section 78B-15-607 to also include "a support enforcement agency" as one of the parties allowed to challenge a child's paternity "at any time before filing an action for divorce or in the pleadings at the time of the divorce of the parents." *See* 2017 Utah Laws 632. So in 2014, the court of appeals' interpretation of subsection 607(1) limited standing to only the mother and the presumed father. Now, Mother's similar interpretation of subsection 607(1) limits standing to only the mother, the presumed father, and a support enforcement agency.

¶9    The district court denied Mother's motion to dismiss in an order dated December 16, 2016. The district court reasoned that because *R.P.* was resolved on statutory grounds, it had no bearing on Olguin's constitutional claims. The court then concluded that dismissing Olguin's paternity petition for lack of standing under subsection 607(1) would violate Olguin's right to procedural due process under the Fourteenth Amendment to the United States Constitution.

¶10    In preparation for trial, Mother and Olguin submitted trial briefs. In her brief, Mother reasserted that Olguin lacked standing to challenge the presumption of paternity under the court of appeals' decision in *R.P.* She also argued that the constitutional issues presented in this case had already been decided by the United States Supreme Court. *See generally Michael H. v. Gerald D.*, 491 U.S. 110 (1989) (plurality opinion) (addressing both procedural and substantive due process issues in the context of a California statute denying standing to natural fathers to rebut the presumption of paternity under certain circumstances).

¶11    In an order dated August 24, 2017, the district court recognized the "unusual procedural posture" of this case, noting that it had previously ruled on the standing and procedural due process issues. Nevertheless, because the parties had not previously briefed *Michael H.*, the district court reconsidered its prior ruling. The court acknowledged that it may have misdirected the parties when, in the December 16, 2016 order, it relied on substantive due process case law for the proposition that parents have a fundamental liberty interest in rearing their children. The court thus addressed the parties' new substantive due process arguments, ultimately declining to conclude that Olguin has a substantive due process right at issue in this matter.

¶12    The district court reaffirmed its previous denial of Mother's motion to dismiss on procedural due process grounds. The court concluded that under the facts of this case, Olguin has a protectable liberty interest in rearing the child. Accordingly, the court determined that interpreting subsection 607(1) to bar Olguin from challenging Husband's presumed paternity would deny Olguin the

procedural safeguards of notice and a meaningful opportunity to be heard.[5]

¶13   The parties later stipulated that the case presented significant constitutional questions that should be resolved before trial. In a January 12, 2018 order, the district court certified that order and its December 16, 2016 and August 24, 2017 orders for appeal pursuant to rule 54(b) of the Utah Rules of Civil Procedure. Mother and Husband appealed.

¶14   The court of appeals determined that the district court erred in certifying the case under rule 54(b). But it acknowledged that rule 5(a) of the Utah Rules of Appellate Procedure allows appellate courts to treat a timely filed notice of appeal from an order improperly certified under rule 54(b) as a petition for interlocutory appeal. It therefore construed the notice of appeal as a petition for interlocutory appeal and granted that petition.

¶15   The court of appeals then certified the interlocutory appeal to us for original review, reasoning that the appeal presents important questions of constitutional law that have yet to be decided.

¶16   We exercise jurisdiction pursuant to Utah Code section 78A-3-102(3)(b).

## STANDARD OF REVIEW

¶17   "The interpretation and constitutionality of a statute are questions of law that we review for correctness." *Waite v. Utah Labor Comm'n*, 2017 UT 86, ¶ 5, 416 P.3d 635.

## ANALYSIS

¶18   The court of appeals certified this case to us to determine "whether Utah Code section 78B-15-607(1) violates the procedural due process requirements of the Fourteenth Amendment of the United States Constitution insofar as the statute limits standing to challenge the paternity of a child born during a marriage to the presumed father and mother of the child." We note that Olguin also raises a substantive due process claim. And alleged fathers in companion cases, in which we also issue opinions today, raise these due process and equal protection challenges to subsection 607(1). *See*

---

[5] At this time, the district court also granted Olguin's motion to join Husband as a necessary party.

*Castro v. Lemus*, 2019 UT 71, ¶¶ 53, 57, --- P.3d --- (arguing the UUPA violates alleged fathers' state and federal procedural and substantive due process rights as well as principles of equal protection); *Mackley v. Openshaw*, 2019 UT 74, ¶ 2 n.2, --- P.3d --- (same); *Hinkle v. Jacobsen*, 2019 UT 72, ¶ 19, --- P.3d --- (arguing the UUPA violates the due process and equal protection clauses of the federal constitution).

¶19   However, we hold in one companion case, *Castro*, that the UUPA does grant standing to an alleged father under subsection 602(3), and subsection 607(1) does not alter this when the child was conceived or born during a marriage with a presumed father. 2019 UT 71, ¶¶ 3, 12, 51, 61. Therefore, we need not consider whether the contrary interpretation of subsection 607(1) would be unconstitutional. Accordingly, we affirm the district court's denial of the motion to dismiss on alternative grounds. Specifically, we affirm the district court's ruling that Olguin has standing to rebut the presumption of paternity.

¶20   It is within our discretion "to affirm [a] judgment on an alternative ground if it is apparent in the record." *Madsen v. Wash. Mut. Bank fsb*, 2008 UT 69, ¶ 26, 199 P.3d 898; *see also Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 ("[A]n appellate court may affirm the judgment appealed from 'if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court.'" (citation omitted)). For a legal theory "[t]o be 'apparent on the record,' '[t]he record must contain sufficient and uncontroverted evidence supporting the ground or theory to place a person of ordinary intelligence on notice that the prevailing party may rely thereon on appeal.'" *Francis v. State, Utah Div. of Wildlife Res.*, 2010 UT 62, ¶ 10, 248 P.3d 44 (second alteration in original) (citation omitted). When the record contains this evidence, we may affirm on alternative grounds. We opt to do so here.

¶21 Mother and Husband have raised two additional arguments in this interlocutory appeal that we briefly address. First, they argue that granting Olguin standing to rebut Husband's presumption of paternity in effect terminates Husband's parental rights and violates his fundamental liberty interests in his marriage and rearing children born into that marriage.

¶22 We note that our decision today holds only that the UUPA grants standing to Olguin; it should not be construed to hold that Olguin has rebutted Husband's presumed paternity. And this opinion does not impact the district court's ability to make any other determinations it deems relevant under the UUPA. Accordingly, any argument that Husband's parental rights have been terminated is premature.

¶23 Second, Mother and Husband argue that the district court erred in limiting which issues would be considered at trial on remand. They reference a paragraph of the January 12, 2018 order. But the record and briefing before us is inadequate to review pretrial evidentiary rulings made by the district court. Additionally, that is not the type of issue this court would generally address before trial in an interlocutory proceeding. *See* UTAH R. APP. P. 5(g) ("An appeal from an interlocutory order may be granted only if it appears that the order involves substantial rights and may materially affect the final decision or that a determination of the correctness of the order before final judgment will better serve the administration and interests of justice."). Accordingly, we decline to address the district court's pretrial evidentiary decisions.

## CONCLUSION

¶24 We conclude that the UUPA grants standing to Olguin to adjudicate his paternity of the child. Accordingly, we affirm the district court's denial of Mother's motion to dismiss. And we remand to the district court for further proceedings consistent with this opinion and our holding in *Castro v. Lemus*, 2019 UT 71, --- P.3d ---.